UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

RHONDA L. LAFONTAINE                                                                                              PLAINTIFF

VERSUS                                                                        CIVIL ACTION NO. 1:21-CV-167-TBM-RPM

COMMISSIONER OF SOCIAL
SECURITY                                                                                                         DEFENDANT

**REPORT AND RECOMMENDATIONS**

Before the Court is Plaintiff Rhonda L. Lafontaine's complaint appealing from the Commissioner of Social Security's decision denying her claim for disability benefits under the Social Security Act (the Act). Plaintiff was 49 years old at the alleged onset of disability, with an 11th grade education and past relevant work as a sales associate and cafeteria worker/cashier. Doc. [6] at 23, 31, 121, 265, 342, 381. In her initial application she alleged a period of disability beginning January 27, 2016, due to stroke, visual impairment, depression, and anxiety. *Id.* at 121, 134. Plaintiff filed a second application on March 1, 2018, alleging disability due to stroke, hypertension, impaired vision, anxiety, depression, memory loss, agoraphobia, sleep apnea, and hyper cholesterol. *Id.* at 147-48. She then filed a third application on October 25, 2018, alleging disability due to stroke, hypertension, impaired vision, anxiety, depression, memory loss, agoraphobia, sleep apnea, hypercholesterolemia, and kidney problems. *Id.* at 156-57, 169-70. These applications were denied initially and on reconsideration. *Id.* at 181, 186, 195, 200, 210. Lafontaine eventually requested and was granted a hearing before an Administrative Law Judge (ALJ). *Id.* at 91, 97-120, 220-21.

On October 16, 2020, the ALJ issued a decision finding Lafontaine not disabled. *Id.* at 17-32. The ALJ determined that Lafontaine met the insured status requirements through March 31, 2021, and that she had not engaged in substantial gainful activity since January 27, 2016—

the alleged onset date. *Id.* at 19. The ALJ further found that Lafontaine had severe impairments of left homonymous hemianopsia, obesity, borderline intellectual functioning, anxiety, and depression. *Ibid.* The ALJ concluded that Lafontaine did not meet any of the listed impairments; however, she has the residual functional capacity (RFC) to perform light work with certain additional limitations. *Id.* at 21-23. Specifically, the ALJ found she should avoid more than occasional exposure to hazards including moving machinery and unprotected heights; she should be able to wear safety glasses; she should not operate heavy machinery; she is limited to performing simple, routine tasks in which she has no more than occasional interaction with the public or coworkers; and she should not be required to drive as part of her work duties. *Id.* at 22-23. The ALJ determined that Lafontaine cannot return to her past relevant work. *Id.* at 30-31. Relying on testimony from a vocational expert, the ALJ found that Lafontaine is capable of performing jobs that exist in significant numbers in the national economy; therefore, she is not disabled as defined by the Act. *Id.* at 31-32, 115-16.

The Appeals Council denied Lafontaine's request for review. *Id.* at 7-10. Lafontaine then filed the instant appeal of the Commissioner's decision. Doc. [1]. In her memorandum brief, Lafontaine argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not properly weigh the opinions of consultative examiner, Dr. Ethel Hetrick. Doc. [10].

## Law and Analysis

### Standard of Review

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.

1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision is supported by substantial evidence, then the findings are conclusive; and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues de novo, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5). The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a), § 404.920(a). Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from

performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work. *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step. *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Therefore, if the claimant proves that he is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy. The burden then shifts back to the claimant to establish that he cannot perform this alternative employment. *Id.*

**<u>Evaluation of Dr. Hetrick's medical opinion</u>**

Lafontaine argues that the ALJ erred in her RFC determination with regard to Dr. Hetrick's medical opinions. At issue is whether Lafontaine can perform simple, routine tasks in a work setting, as determined by the ALJ. Dr. Hetrick conducted two mental health examinations. In her report from the first examination of October 20, 2016, Dr. Hetrick opined that Lafontaine possessed the mental capacity to perform routine, repetitive tasks, but that "[h]er ability to tolerate the stress of the workplace appears poor." Doc. [6] at 551. In the report from the second examination of April 10, 2019, Dr. Hetrick reiterated that Lafontaine's "ability to tolerate the stress of the workplace appears poor." *Id.* at 772. However, in this later report, Dr. Hetrick also opined that Plaintiff could "perform routine, repetitive tasks, *but not in a competitive work setting* due to poor working memory, slowed mental processing and anxiety." *Id.* at 771 (emphasis added). Lafontaine first argues that in the persuasiveness analysis, the ALJ confused Dr. Hetrick's 2016 and 2019 opinions. Second, she argues that the ALJ failed to provide an adequate basis for rejecting Dr. Hetrick's opinion that Lafontaine's ability to tolerate stress in the workplace appears to be poor.

4

Whether the ALJ properly evaluated medical opinions and whether substantial evidence supports an RFC determination are legally distinct issues. Under the social security regulations, an ALJ is required to "explain" his persuasiveness finding insofar as "consistency" and "supportability" are concerned. 20 C.F.R. § 404.1520c; 20 C.F.R. § 416.920c.  If the Court cannot determine the ALJ's reasons for finding a given medical opinion to be persuasive in the first instance, the Court cannot determine whether that finding is supported by substantial evidence. *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D.Tenn. July 20, 2021).  In short, the question of whether an ALJ provided an adequate discussion to allow for meaningful judicial review is a threshold question that is addressed before reaching the issue of substantial evidence. *Cooley v. Comm'r of Soc. Sec.*, No. 2:20-CV-46-RPM, 2021 WL 4221620, at *6–*7 (S.D.Miss. Sept. 15, 2021).

The Social Security regulations provide that an ALJ "will consider all evidence in [a claimant's] case record when [making] a determination or decision whether [the claimant is] disabled."  20 C.F.R. § 404.1520(a)(3).  Pursuant to 20 C.F.R. § 404.1520c, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)".  In other words, ALJs are no longer required to give controlling weight to the opinions of treating physicians.  However, before an ALJ may discount or reject an opinion, he or she must "articulate in [the] determination or decision how persuasive [the ALJ] find[s] *all* of the medical opinions ... in [the claimant's] case record." 20 § 404.1520c(b) (emphasis added); *see Moore v. Saul*, No. 3:20-CV-48-DPJ-MTP, 2021 WL 754833, at *3 (S.D.Miss. Feb. 26, 2021).  In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) other factors that tend to support or contradict the

opinion. 20 C.F.R. § 404.1520c(c). The most important factors in evaluating persuasiveness are supportability and consistency. 20 C.F.R. 404.1520c(b)(2).

Lafontaine argues that the ALJ erred in her RFC assessment. She argues that the ALJ confused Dr. Hetrick's 2016 and 2019 opinions. In reference to both the 2016 examination and the 2019 examination, the ALJ mistakenly repeated some of the relevant findings from Dr. Hetrick's 2019 report. Doc. [6] at 30. This appears to be a mere drafting error. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("[p]rocedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected."). As demonstrated earlier in the ALJ's decision, the ALJ was well aware of the differences between the two opinions. The ALJ gave lengthy, detailed treatments of both the 2016 and 2019 reports and the examination findings contained in each. *Id.* at 25-26.

Lafontaine relies on the 2019 report to argue that she is disabled, because Dr. Hetrick opined that Lafontaine cannot perform tasks in a competitive work setting. Both the 2016 and 2019 reports concluded that Lafontaine could perform routine, repetitive tasks; however, in the 2019 report, Dr. Hetrick added the qualification that Lafontaine cannot perform in a competitive work setting. In other words, the 2019 report appears to contain a more stringent limitation than contained in the 2016 report, because the 2016 report made no reference to her ability to function in a competitive work setting. When questioned at the hearing, the vocational expert stated that the more stringent limitation would preclude all work. *Id.* at 117. In her decision, the ALJ explained why she found Dr. Hetrick's 2019 report, and by extension the more stringent limitation, to be unpersuasive. Any error in "confusing" the persuasiveness analysis with regard to Dr. Hetrick's less exacting 2016 opinion would be harmless.

Regardless, the ALJ also explained that Dr. Hetrick's 2016 opinion was unpersuasive because it was internally inconsistent and not supported by Lafontaine's presentation at the examination. Specifically, the ALJ noted that Lafontaine "was able to concentrate well enough and remember math skills she acquired when young. Her thinking skills were adequate. In addition, her social skills appeared intact. She [was] fully alert and responsive to the examination process. Her speech was intelligible and her eye contact was fair." *Id.* at 30. A review of Dr. Hetrick's 2016 report confirms that Lafontaine's "[s]peech was spontaneous and intelligible"; she was "alert and responsive"; her thinking "appeared to be coherent, and logical"; "[s]he had no difficulty with simple math problems" and "appears to have adequate abstract thinking skills"; and her "intellectual functioning is likely in the average range." *Id.* at 550-51. Thus, the ALJ's analysis and critique tracks Dr. Hetrick's own observations and examination findings as contained in the 2016 report.

Lafontaine contends that the ALJ failed to provide a basis for rejecting Dr. Hetrick's opinion that Lafontaine's ability to tolerate workplace stress appeared to be poor. Dr. Hetrick reached this conclusion in both the 2016 and 2019 examination reports. *See* Doc. [6] at 551, 772. In conducting the persuasiveness analysis, the ALJ made specific findings about Dr. Hetrick's opinion that Lafontaine's ability to tolerate stress in the workplace appeared to be poor. Doc. [6] at 30. The ALJ concluded that Dr. Hetrick's finding was not supported by objective evidence but was predicated on Lafontaine's husband's statements about Lafontaine being more irritable. *Ibid.* The ALJ also found the opinion to be inconsistent with Dr. Hetrick's behavioral observations that Lafontaine was able to engage in an interactive, age-appropriate conversation; and her speech was spontaneous. *Ibid.* Thus, as required by the regulations, the ALJ looked to the supportability and consistency of Dr. Hetrick's medical opinion when conducting a

persuasiveness analysis.  Based on the foregoing, the reviewing court is able to conduct a meaningful review of the ALJ's treatment of the medical opinion evidence.

The ALJ's conclusion that Lafontaine could perform simple, routine tasks in a work setting is supported by substantial evidence in the record.  The ALJ found "somewhat persuasive" the opinion of Vickie Prosser, PhD, a state agency psychologist who concluded that Lafontaine had only moderate restrictions on maintaining social function and maintaining concentration, persistence, or pace.  Doc. [6] at 29, 124-28.  Dr. Prosser also opined that Lafontaine could understand, remember, and carry out very short and simple instructions.  *Id.* at 129.  Dr. Prosser further elaborated that Lafontaine "can complete a normal 40-hour week of work without excessive interruption from psychological symptoms, can relate appropriately to coworkers and supervisors on a limited basis and can adapt to a job setting." *Ibid.*  As noted by the ALJ, David Powers, PhD, a state agency psychologist, also opined that Lafontaine has moderate limitation in understanding, remembering, or applying information; and mild limits in interacting with others.  *Id.* at 29, 161-62.  Dr. Powers further opined that Lafontaine maintained the RFC to perform routine, repetitive work.  *Id.* at 162.  The ALJ found that the opinions of Dr. Prosser and Dr. Powers supported a finding that Lafontaine "is limited to, but capable of, performing simple, routine tasks in which she has no more than occasional interaction with the public and coworkers." *Id.* at 29.  As such, this challenged aspect of the RFC is supported by substantial evidence.

## **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that the decision of the Commissioner be affirmed.

**NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court.  A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections.  Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties.  A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court.  Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

      SO ORDERED AND ADJUDGED, this the 6th day of June 2022.

                                        /s/ *Robert P. Myers, Jr.*
                                        ROBERT P. MYERS, JR.
                                        UNITED STATES MAGISTRATE JUDGE